IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DUSTIN J. MERRYFIELD,

                    Plaintiff,

        v.                          CASE NO.  07-3289-SAC

DON JORDAN, SECRETARY
OF KANSAS SRS, et al.,

                    Defendants.

### MEMORANDUM AND ORDER

This is a civil rights complaint, 42 U.S.C. § 1983, filed by
a person involuntarily committed to the Sexual Predator Treatment
Program (SPTP) at Larned State Hospital, Larned, Kansas (LSH),
pursuant to a civil proceeding authorized by the Kansas Sexually
Violent Predator Act (KSVPA), K.S.A. § 59-29a01, _et_ _seq_[1].

---

[1]    The KSVPA was upheld by the United States Supreme Court against
constitutional attack in Kansas v. Hendricks, 521 U.S. 346 (1997).  The Kansas
Legislature enacted the KSVPA in 1994 "to grapple with the problem of managing
repeat sexual offenders."  The first section of the KSVPA explains:

> The legislature finds that there exists an extremely dangerous group
> of sexually violent predators who have a mental abnormality or
> personality disorder and who are likely to engage in repeat acts of
> sexual violence if not treated for their mental abnormality or
> personality disorder. Because the existing civil commitment
> procedures under K.S.A. 59-2901 et seq. and amendments thereto are
> inadequate to address the special needs of sexually violent predators
> and the risks they present to society, the legislature determines
> that a separate involuntary civil commitment process for the
> potentially long-term control, care and treatment of sexually violent
> predators is necessary. The legislature also determines that because
> of the nature of the mental abnormalities or personality disorders
> from which sexually violent predators suffer, and the dangers they
> present, it is necessary to house involuntarily committed sexually
> violent predators in an environment separate from persons
> involuntarily committed under K.S.A. 59-2901 et seq. . . .

K.S.A. § 59-29a01.  The SPTP civil commitment statute in Kansas has been
described as "narrowly drawn" to serve the State's compelling interest in treating
sexual predators and protecting society from their inappropriate behavior.
Williams v. DesLauriers, 172 P.3d 42, 44 (Kan.App. 2007).  The Act defines a
"sexually violent predator" as:

> "any person who has been convicted of or charged with a sexually
> violent offense and who suffers from a mental abnormality or

Plaintiff's allegations are numerous, scattershot, general complaints and statements concerning conditions, treatment and his detention in the SPTP at LSH.  He seeks declaratory and injunctive relief as well as release.

Plaintiff has filed a motion for leave to proceed in forma pauperis (Doc. 2).  He has also filed a Motion to Appoint Counsel (Doc. 4) citing his lack of access to an adequate law library, Motion for Restraining Order/Temporary Injunction (Doc. 5), Motion for Temporary Injunction, Postage and Copies (Doc. 6), and a Motion to Submit New Evidence (Doc. 7).  Having examined all materials filed by plaintiff, the court finds as follows.

## SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff does not challenge the civil commitment proceedings that led to his involuntary confinement as a sexually violent

---

personality disorder which makes the person likely to engage in repeat acts of sexual violence."

K.S.A. § 59-29a02(a).  A "mental abnormality" is defined as a

"congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually iolent offenses in a degree constituting such person a menace to the health and safety of others."

K.S.A. § 59-29a02(b).  K.S.A. § 59-29a07(a) provides:

The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator.  If such determination that the person is a sexually violent predator is made by a jury, such determination shall be by unanimous verdict of such jury. Such determination may be appealed.  If the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the secretary of social and rehabilitation services for control, care and treatment until such time as the person's mental abnormality or personality disorder has so changed that the person is safe to be at large.  Such control, care and treatment shall be provided at a facility operated by the department of social and rehabilitation services.

Hendricks, 521 U.S. at 350-51; see K.S.A. § 59-29a07; Williams, 172 P.3d at 45-46.

predator (SVP). Nor does he challenge the constitutionality of the KSVPA. Instead, he generally challenges the conditions of his involuntary confinement in the SVP unit at the LSH and the adequacy of the treatment provided SVPs in the SPTP. More specifically, plaintiff claims his federal constitutional rights are being violated by: (1) denial of treatment for his sexual predator disorder; (2) unconstitutional conditions in the "main program" and SPTP buildings; (3) unconstitutional conditions in the ITU; (4) denial of access to the courts; (5) denial of an adequate administrative grievance process; (6) discipline without adequate due process; (7) denial of medical and dental care; (8) excessive use of mechanical restraints; (9) restrictions on visitation rights; (10) interference with his mail; (11) denial of his right to privacy; (12) unreasonable searches; (13) deprivation of his property; (14) denial of an adequate Vocational Training Program; (15) double jeopardy, and (16) application to him of unconstitutional state statutes. Plaintiff also repeatedly claims he is being denied equal protection of the law by punitive and overly restrictive conditions worse than those afforded prisoners of the Kansas Department of Corrections (KDOC).

Plaintiff asks the court to order his release. Alternatively, he asks the court to order that the SPTP "become constitutionally adequate," to provide SVPs with equal or better treatment than provided to KDOC inmates, to confine him under the "least restrictive means," and to adhere to all laws, patients' rights, and constitutional rights. The court is also asked to order defendants to return plaintiff's property, place him back in the main treatment phase program, refrain from using restraints, and provide plaintiff

with electricity and cable at no charge.

## MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Plaintiff moves for leave to proceed without prepayment of fees (Doc. 2) and has submitted an affidavit and financial records in support.  The court finds he has insufficient funds to pay the filing fee, and grants this motion.

## MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF

The court has considered plaintiff's motions for temporary injunction and restraining order (Docs. 5, 6).  In support of these motions, plaintiff complains he is not "in the main treatment program" and thus cannot "move forward or work on the issues" underlying his commitment to the program at LSH.  He further alleges he "would like to work towards his eventual release rather than being stonewalled and denied treatment."  He claims he will suffer irreparable harm while this matter is pending "including the possibility of an unnecessary extension of his stay."

To obtain a temporary restraining order or a preliminary injunction in federal court, the movant has the burden of establishing that:

> (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992); Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005).  A preliminary injunction is an extraordinary remedy and

should only be granted when the moving party clearly and unequivocally establishes its necessity. See U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc., 883 F.2d 886, 888-89 (10th Cir. 1989). Plaintiff's motion falls far short of satisfying this heavy burden. The motion contains no convincing factual support. Moreover, plaintiff has not shown a substantial likelihood of prevailing on the merits. Thus, plaintiff's motion for preliminary injunctive relief shall be denied.

Plaintiff's request for this court to Order that he be provided with free writing materials including copies and postage is denied, as it is based on a claim of denial of access, and plaintiff has not alleged sufficient facts to support such a claim.


**SCREENING FOR FRIVOLOUS CLAIMS AND FAILURE TO STATE A CLAIM**

Because plaintiff proceeds in forma pauperis, the litigation process begins with the court screening his complaint. See Lister v. Department of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005); Curiale v. Walker, 136 Fed.Appx. 139, at **1 (10th Cir. June 7, 2005, unpublished)[2]; Boatright v. Larned State Hosp., Case No. 05-3183 (Doc.3)(May 9, 2005, unpublished); McGore v.Wrigglesworth, 114 F.3d 601, 608 (6th Cir. 1997)(In contrast to 28 U.S.C. § 1915A, § 1915(e) is not restricted to actions brought by prisoners); Lopez v. Smith[3],

---

[2]     Copies of unpublished opinions cited as precedent are attached in accordance with rules of the Tenth Circuit Court of Appeals.

[3]     The Ninth Circuit Court of Appeals explained in Lopez:

The PLRA contains several provisions that require district courts to screen lawsuits filed by prisoners and to dismiss those suits sua sponte under certain circumstances. Among these provisions is section 804(a)(5), which is codified as part of the in forma pauperis

203 F.3d 1122, 1126 (9th Cir. 2000)(Although in forma pauperis provisions in the PLRA were intended to cut down on prisoner lawsuits, § 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners.).   28 U.S.C. § 1915(e)(2)(B)(ii)[4] provides that "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief can be granted."   Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 806 (10th Cir. 1999).   Under § 1915(e), the district court may screen the complaint prior to service on the defendants, and must dismiss the complaint at any time if it fails to state a claim.[5]

Even if it were settled law that § 1915(e) applies only to

_____

statute at 28 U.S.C. § 1915(e)(2).

                    *  *  *

The other provisions are codified at 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).  While section 1915(e) applies to all in forma pauperis complaints, section 1915A applies only to actions in which a prisoner seeks redress from a governmental entity or employee. Section 1997e(c) applies to prisoner complaints specifically challenging prison conditions. All three of the provisions direct district courts to dismiss a complaint that fails to state a claim upon which relief may be granted.

[4]    Plaintiff is not technically a "prisoner" as defined in the PLRA.  It has been held that the exhaustion, full/initial partial payment, and three-strikes provisions of the current in forma pauperis statutes do not apply to in forma pauperis litigants who are not prisoners.  Nevertheless, several courts including the Tenth Circuit have applied this subsection, which does not refer to prisoners, to suits brought by non prisoners.

[5]    28 U.S.C. § 1915(e)(2)(B) provides:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
     (A) the allegation of poverty is untrue; or
     (B) the action or appeal--
          (i) is frivolous or malicious;
          (ii)fails to state a claim on which relief may be granted; or
          (iii) seeks monetary relief against a defendant who
          is immune from such relief.

complaints filed by prison inmates, this court would still screen the complaint herein under pre-PLRA case law based upon the prior in forma pauperis statute, 28 U.S.C. § 1915(d)[6].  During screening, leave to amend is generally granted rather than outright dismissal when, as here, insufficient facts are alleged in support of federal constitutional claims.

Plaintiff's complaint is sixty-six pages long and accompanied by hundreds of pages of exhibits[7].  The substance of Mr. Merryfield's pleading is muddled by his numerous conclusory and frivolous claims as well as repetitive statements.  Nevertheless, the Court has taken pains to carefully screen the complaint and liberally construe plaintiff's claims.  The court discusses each of plaintiff's claims herein and the deficiencies in his claims apparent from the face of the pleading.  Plaintiff is required to file an Amended Complaint that cures the deficiencies found by the court.  Once filed, the Amended Complaint shall supercede and entirely replace the original complaint.  If Mr. Merryfield fails to

---

[6]      In <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989), the U.S. Supreme Court noted:

> 28 U.S.C. § 1915(d), the precursor to § 1915(e), was designed largely to discourage the filing of baseless lawsuits, along with the resulting waste of judicial resources, that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under FRCP Rule 11.  To this end, the statute grants courts the authority to dismiss a claim based on an indisputably meritless legal theory, and the unusual power "to pierce the veil" of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

<u>Id</u>. at 324, 327.

[7]      Plaintiff has twice violated D.Kan. Rule 5.1(f), which prohibits the submission of bulky or voluminous materials in their entirety for filing with a pleading, except upon leave of court where such materials are deemed essential. He is warned that the "court may order any pleading or paper stricken if filed in violation of this rule."  <u>Id</u>.

comply, this action may be dismissed without further notice.


**CONCLUSORY ALLEGATIONS INSUFFICIENT TO STATE A CLAIM**

Because plaintiff is proceeding pro se the court must construe his pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. Erickson v. Pardus, 127 S.Ct. 2197 (2007); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). However, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall, 935 F.2d at 1110. No special legal training is necessary to recount the facts surrounding an alleged injury, so even a pro se plaintiff can and must provide facts which state a valid claim. Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert. denied, 493 U.S. 1059 (1990). While plaintiff need not describe every fact in detail, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Hall, 935 F.2d at 1110; Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996). The court may not supply additional facts not alleged or construct a legal theory on plaintiff's behalf. Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Plaintiff frequently fails to allege any set of facts in support of his claims[8]. Each claim must be supported by a set of facts containing a brief description of incidents during which plaintiff believes his constitutional rights were violated and

---

[8]      Plaintiff's allegations are mainly legalistic statements, possibly grafted from his legal research of court opinions on claims raised by SVPs elsewhere. Plaintiff's efforts as a pro se litigant would be better spent recording facts describing his personal experiences that support his legal claims.

should include relevant dates, location, the personal injury suffered by plaintiff, names of defendants actually involved, and a brief description of the defendants' personal acts or inactions that caused plaintiff injury. In this Memorandum, the court finds when plaintiff has failed to allege a "set of facts" in support of a particular claim. Plaintiff must either omit such claims from his Amended Complaint or, if sufficient facts exist to support a claim designated herein as conclusory, he must state those facts in his Amended Complaint. If claims without factual support are not eliminated by plaintiff, they will be dismissed by the court in a subsequent Order.

## KSVPA CONSTITUTIONAL

As noted, the U.S. Supreme Court upheld the constitutionality of the KSVPA in <u>Kansas v. Hendricks</u>. The Court ruled that the Act met the requirements of substantive due process and was civil rather than criminal in nature. <u>Kansas v. Crane</u>, 534 U.S. 407, 409 (2002). The Kansas courts have also upheld the constitutionality of the KSVPA, and found it to be civil and not punitive. Plaintiff does not directly assert that the KSVPA is unconstitutional, but he does claim that his confinement thereunder is punitive and that certain provisions as applied to him are unconstitutional. At the outset, the court finds that any of plaintiff's claims which might be construed as challenges to the constitutionality of the KSVPA or to its civil nature are denied on the basis of <u>Hendricks</u>.

## PENDING STATE COURT ACTION

Mr. Merryfield alleged in his complaint that he previously

commenced an action in state court and that conditions of confinement and lack of treatment complained of herein are presently before the state district court in Butler County, Kansas. Plaintiff must file a "Response to Order" stating to this court precisely what claims he raised in his state court action. Alternatively, he may attach a copy of the complaint he filed in state court. In his "Response," he must also inform this court why his already pending state action should not preclude his proceeding on the same claims in this federal court action.

## FAILURE TO STATE A CLAIM

## AND TO ALLEGE PERSONAL PARTICIPATION OF DEFENDANTS

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff names as defendants Don Jordan, Secretary, Kansas Social and Rehabilitative Services (SRS); Dr. Mark Schutter, Superintendent, LSH; Brenda Hagerman, Legal Counsel, LSH; Dr. Leo Herman, SPTP Policy Director, LSH; Dr. Austin Deslauriers, SPTP Clinical Director, LSH. All defendants are alleged to have acted in their official capacities as state employees[9]. A showing that each defendant's personal participation caused the deprivation of a federal right is essential to a § 1983 action. Kentucky v. Graham, 473 U.S. 159, 166 (1985);

---

[9]     Plaintiff alleges each defendant is "employed by the State of Kansas," and that each was acting in his or her "official capacity as an employee of the United States." Defendants are not employees of the United States.

Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). A prisoner may not attribute constitutional violations to officials based solely on the doctrine of respondeat superior. In this Memorandum, the court indicates when plaintiff has failed to allege the violation of a federal constitutional right and when he has failed to allege the personal participation of a named defendant in connection with a particular claim. Unless Mr. Merryfield cures these deficiencies in his Amended Complaint, the court may dismiss the defendants whose involvement is not alleged and those claims not involving any named defendant or a federal constitutional violation.

The court is mindful that plaintiff is not requesting damages for past injuries, but is seeking declaratory and injunctive relief to prevent defendants from continuing to violate his constitutional rights. In such a case, "to satisfy Article III's 'case or controversy' requirement, plaintiff "must show either that the injuries he complains of are continuing or that he is under the immediate threat that the injuries complained of will be repeated." See Thielman v. Leean, 140 F.Supp.2d 982, 985 (W.D.Wis. 2001), aff'd 282 F.3d 478 (7th Cir. 2002). The United States Supreme Court has explained: "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).

## REQUEST FOR RELEASE FROM CUSTODY

Plaintiff asks the court to immediately declare that the Sexual

Predator Treatment Program is punitive and order him released from his involuntary confinement.   Plaintiff is a "person in custody pursuant to the judgment of a State court," and the sole remedy for seeking release from such confinement is a petition for writ of habeas corpus.   See 28 U.S.C. § 2254(a); Preiser v. Rodriquez, 411 U.S. 475 (1973).   Furthermore, all remedies available in the courts of the State must be exhausted before such a claim for release may be considered in federal court.   28 U.S.C. § 2254(b)(1).   The court denies Mr. Merryfield's request for release, without prejudice to his seeking such relief by petition for writ of habeas corpus after he has fully exhausted state court remedies.

**GENERAL LEGAL STANDARDS OF REVIEW**

Only a few months ago, the Ninth Circuit issued an opinion in a lawsuit it described as "unique, in that it is one of the first widespread class actions to challenge the conditions of detention for civilly confined SVPs." Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007)[10].   The court in Hydrick set forth the following standards:

> First, civilly detained persons must be afforded "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." (Citing Youngberg, 457 U.S. at 322, (cite shortened and one cite omitted).   It follows logically, then, that the rights afforded prisoners set a floor for those that must be afforded SVPs . . . .
>
> Second, where there is clearly established body of law that applies to all civilly committed persons, there is no reason that the law should not apply to SVPs as

_____

[10]    This case was filed in 1998 and involved a class of approximately six hundred persons either civilly committed or awaiting civil commitment under California's "SVP Act."   The court was considering a motion to dismiss filed by defendants based "largely on qualified immunity."   Id. at 983.

well. . . .

> Thus, there are two bodies of law from which we might
> draw "clearly established" law for qualified immunity
> purposes: first, where the SVPs claim a violation of a
> right that is clearly established in the prison context,
> and second, where the SVPs claim a violation of a right
> that is clearly established for all civilly detained
> persons."

> We acknowledge at the outset that it is not always
> clearly established how much more expansive the rights of
> civilly detained persons are than those of criminally
> detained persons. As discussed below, the rights afforded
> civilly detained persons are flexible enough to take into
> account the circumstances of detention. The law generally
> requires a careful balancing of the rights of individuals
> who are detained for treatment, not punishment, against
> the state's interests in institutional security and the
> safety of those housed at the facility. <u>See</u>, <u>e.g.</u>,
> <u>Youngberg</u>, 457 U.S. at 319-22, 102 S.Ct. 2452. In
> weighing those interests, it cannot be ignored that,
> unlike the plaintiff in <u>Youngberg</u> who was civilly
> committed because of mental infirmities, SVPs have been
> civilly committed subsequent to criminal convictions and
> have been adjudged to pose a danger to the health and
> safety of others. Therefore, the rights of SVPs may not
> necessarily be coextensive with those of all other
> civilly detained persons.

<u>Hydrick</u>, 500 F.3d at 989-90[11].

Plaintiff urges that his claims are not to be analyzed under the Eighth Amendment, but as a denial of substantive due process under the Fourteenth Amendment. <u>See</u> <u>Youngberg</u>, 457 U.S. 307, 321-22 (1982)(involuntarily committed mentally retarded)("[T]he more protective fourteenth amendment standard applies to conditions of confinement when detainees . . . have not been convicted" of a crime.); <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 FN 16 (1979)(pretrial detainees). Due Process prohibits any kind of punishment, not merely cruel and unusual punishment, of a pretrial detainee. <u>Bell</u>,

---

[11]   Plaintiff's case is significantly different from <u>Hydrick</u>, in that the Supreme Court found in <u>Hendricks</u> that the "overriding goal" of commitment under the KSVPA was incapacitation, and treatment was an ancillary goal. The KSVPA is substantially the same as when it was considered in <u>Hendricks</u>.

441 U.S. at 535.

In 2001, a district court considered claims nearly identical to plaintiff's brought by SVPs committed under Wisconsin's SVPA. <u>Thielman</u>, 140 F.Supp.2d at 989-990.  The court applied the following standards to defendants' motion for summary judgment:

> When a state deprives a person of his ability to care for himself by committing him involuntarily, it assumes an obligation to provide some minimum level of well-being and safety.  <u>See DeShaney v. Winnebago County Dept. of Social Services</u>, 489 U.S. 189, 198-200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).  In (<u>Youngberg</u>), the Supreme Court held that under the due process clause of the Fourteenth Amendment, an institutionalized person in state custody "enjoys constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests."  <u>Id</u>., 457 U.S. at 324, 102 S.Ct. 2452.  Moreover, due process requires that the conditions and duration of confinement relate reasonably to the purpose for which persons are committed.  <u>See Seling v. Young</u>, 531 U.S. 250, 121 S.Ct. 727, 736, 148 L.Ed.2d 734 (2001)(citations omitted).

> . . . Although an individual committed involuntarily to a mental institution is thought entitled to "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish," <u>id</u>. at 322, 102 S.Ct. 2452, he does not enjoy an absolute right to freedom of bodily movement.  "In operating [a mental health facility], there are occasions in which it is necessary for the State to restrain the movement of residents-for example, to protect them as well as others from violence."  <u>Id</u>. at 320, 102 S.Ct. 2452. Under a substantive due process analysis, the question "is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint . . . is such as to violate due process."  <u>Id</u>., 457 U.S. at 320, 102 S.Ct. 2452. Answering this question requires courts to balance the plaintiff's liberty interest against the institution's interest in ensuring safety and promoting treatment.

> In <u>Youngberg</u>, . . . the Court held that the "professional judgment" standard was the appropriate test for balancing the individual's and the state's interests and for insuring that "interference by the federal judiciary with the internal operations of [state] institutions" is "minimized."  <u>Id</u>. at 322, 102 S.Ct. 2452.  The Court explained that when evaluating whether an involuntarily committed person's rights have been violated, courts must

show deference to the decisions of professionals:

> [T]he decision, if made by a professional, is
> presumptively valid; liability may be imposed only when
> the decision by the professional is such a substantial
> departure from accepted professional judgment, practice,
> or standards as to demonstrate that the person responsible
> actually did not base the decision on such a judgment.
> 457 U.S. at 323, 102 S.Ct. 2452 (footnote & citations
> omitted).

<u>Thielman</u>, 140 F.Supp.2d at 989-990; <u>see</u> <u>also</u> <u>Atwood v. Vilsack</u>, 338

F.Supp.2d 985, 1007 (S.D. Iowa 2004), *citing* <u>Bell</u>, 441 U.S. at 538;

<u>Laxton v. Watters</u>, 348 F.Supp.2d 1024, 1029 (W.D. Wisc. 2004). The

district court in <u>Thielman</u> concluded:

> In the end, whether one applies Youngberg's professional
> judgment standard or Bell's punitive versus non-punitive
> distinction, the outcome is the same. Under either
> approach, the court must defer to the professional
> expertise of the institution's administrators when
> evaluating the relationship between the challenged
> condition and the government's interest. <u>See</u> <u>Youngberg</u>,
> 457 U.S. at 322-23, 102 S.Ct. 2452 ("there certainly is no
> reason to think judges or juries are better qualified than
> appropriate professionals in making decisions"); <u>Bell</u>, 441
> U.S. at 548, 561-62, 99 S.Ct. 1861 (plaintiff must
> identify "substantial evidence in the record to indicate
> that the officials have exaggerated their response" to
> genuine security concerns in order to overcome "heavy
> burden" to show that restriction is excessive).

<u>Thielman</u>, 140 F.Supp.2d at 991.  Fourteenth Amendment standards were

also applied by the Ninth Circuit Court of Appeals to claims by a

person detained awaiting civil commitment proceedings in a case

relied upon by plaintiff: <u>Jones v. Blanas</u>, 393 F.3d 918, 933 (9th

Cir. 2004), <u>cert</u>. <u>denied</u>, 546 U.S. 820 (2005).  While the legal

reasoning of these courts is instructive, their opinions are not

binding upon this court.

Without the benefit of legal briefs, this court is not prepared

to rule that the standards applicable to pretrial detainees and

persons civilly committed who are not SVPs apply across the board to

all plaintiff's claims.   However, the court applies the Supreme
Court precedent discussed above to plaintiff's claims, including
that a restrictive condition may be imposed on a pretrial or civil
detainee without being considered punishment if "it bear(s) some
reasonable relation to the purpose for which persons are
committed."[12]  Seling v. Young, 531 U.S. 250, 265 (2001).[13]  While
restrictions may not be arbitrary or purposeless, Bell, 441 U.S. at
539, SVPs like other civil detainees and prisoners are undoubtedly
subject to security measures typically used at correctional
facilities.   Id. at 540; Allen v. Illinois, 478 U.S. 364, 373-74
(1986)(Detainees may "be subjected to conditions that advance goals
such as preventing escape and assuring the safety of others, even
though they may not be punished."); Allison v. Snyder, 332 F.3d

---

[12]     The obvious legitimate reason for confining pretrial detainees is to
"ensure their presence" at trial.  In addition, there "is no doubt that preventing
danger to the community is a legitimate regulatory goal." United States v.
Salerno, 481 U.S. 739, 747-48 (1987).  Effective management of the detention
facility is also a valid government objective.  Bell, 441 U.S. at 540.

[13]     In Seling, the Supreme Court considered claims arising under the State
of Washington's SVP Act, which was the model for the KSVPA.  SVP Young alleged
that for years he had been subjected to conditions more restrictive than state
prisoners including confinement to his room, random searches, and excessive
security.  He also complained of privileges being withheld for refusal to submit
to treatment, a lack of certified sex offender treatment providers, and that
confinement could be indefinite.  Seling, 531 U.S. at 259-60.  The Ninth Circuit
had remanded for an evidentiary hearing to determine Young's conditions of
confinement and whether they rendered the Act punitive "as applied" to Young.  The
Supreme Court reversed, because it "expressly disapproved of evaluating the civil
nature of an Act by reference to the effect that Act has on a single individual."
Id. at 262.  The Court also noted Young's claims "are in many respects like the
claims presented in Hendricks, where we concluded that the conditions of
confinement were largely explained by the State's goal to incapacitate, not to
punish."  Id. at 263.  The Court then instructed:

    Our decision today does not mean that (Young) and others committed as
    sexually violent predators have no remedy for the alleged conditions
    and treatment regime at the Center.  The text of the Washington Act
    states that those confined under its authority have the right to
    adequate care and individualized treatment (cite omitted).  [I]f the
    Center fails to fulfill its statutory duty, those confined may have
    a state law cause of action (cite omitted).  It is for the Washington
    courts to determine whether the Center is operating in accordance
    with state law and provide a remedy."

Id. at 265.

1976, 1079 (7th Cir.), cert. denied, 540 U.S. 985 (2003); Thielman,

282 F.3d at 483.  Accordingly, the mere fact that Mr. Merryfield is

subject to institutional restrictions does not justify an inference

that he is being punished:

> Not every disability imposed during pretrial detention
> amounts to "punishment" in the constitutional sense,
> however.  Once the Government has exercised its conceded
> authority to detain a person pending trial, it obviously
> is entitled to employ devices that are calculated to
> effectuate this detention.  Traditionally, this has meant
> confinement in a facility which, no matter how modern or
> how antiquated, results in restricting the movement of a
> detainee in a manner in which he would not be restricted
> if he simply were free to walk the streets pending trial.
> Whether it be called a jail, a prison, or a custodial
> center, the purpose of the facility is to detain.  Loss of
> freedom of choice and privacy are inherent incidents of
> confinement in such a facility.  And the fact that such
> detention interferes with the detainee's understandable
> desire to live as comfortably as possible and with as
> little restraint as possible during confinement does not
> convert the conditions or restrictions of detention into
> "punishment."

Bell, 441 U.S. at 537.

Conditions claims of SVPs have also been analyzed under Sandin

v. Conner, 515 U.S. 472, 484 (1995).  In Sandin, the U.S. Supreme

Court held that a state could not create a liberty interest unless

the right provided freedom from restraint that "imposes atypical and

significant hardship on the inmate in relation to the ordinary

incidents of prison life."  The Seventh Circuit in Thielman, 282

F.3d at 482, applied Sandin to the claim of excessive use of bodily

restraints on SVPs, and concluded it was not the kind of deprivation

that could trigger federal due process protection.  Id.


**DISCUSSION OF CLAIMS**

**1.   DENIAL OF SEXUAL PREDATOR DISORDER TREATMENT**

Plaintiff claims he is entitled to treatment as a sexually

violent predator, but such treatment is either not provided or
inadequate.   He generally asserts that involuntary commitment for
his disorder, without treatment, is cruel and unusual punishment.
While plaintiff may make the conclusory statement that no treatment
is provided, it is contradicted by his factual allegations and
exhibits.[14]  Thus, the court construes plaintiff's claim as that the
treatment being provided at the SPTP is inadequate.

Plaintiff's specific complaints regarding treatment at the SPTP
include: there is no individualized treatment as he takes the same
therapy program, classes and training as all other SPTP residents;
defendants have admitted they are unable to provide "the treatment
constitutionally required" due to lack of funds and staff; therapy
levels are based on an assessment filled out by "untrained
personnel[15]," scores are not justified, and plaintiff is not provided

---

[14]    Plaintiff submitted with his complaint a copy of "The Sexual Predator
Treatment Program of Kansas Resident Handbook (revised August 2007)," and does not
refer to any particular provisions.  Complaint (Doc. 1) Exhib. A.  It contains a
statement of purpose:

First, and foremost, we were directed to protect the public
from any further victimization by sexual offenders assigned to the
program. . . . Second, we were asked to offer a program of treatment
which would assist motivated offenders to reduce their risk of re-
offending to the point where they could safely be managed in open
society as contributing citizens.  This requires a state-of-the-art
approach to behavior change for sex offenders.  To accomplish this,
the program uses the principles of cognitive-behavior change based on
a relapse prevention model.

Id. at 1.  This handbook explains that staff perform a preliminary assessment of
each resident, and develop a Relapse Prevention Plan.  Various phases of the
treatment program are described, along with "main tasks" within each phase such
as remaining free of behavioral reports, receiving certain ratings on Needs
Assessments, successfully completing required polygraphs and regularly
participating in treatment and therapy programs.  The book also provides that a
Comprehensive Integrated Treatment Plan (CITP) is used "for each individual
resident" to measure progress, and each resident is assigned to a Treatment Team
involving "Program Consultants (or the resident's primary therapist), MH/DD's or
CTSs, Nurses and Activity Therapists."  Id. at 6.  A copy of Mr. Merryfield's CITP
is included with his complaint (Exhib. L).

[15]    Professional decision makers include persons "competent, whether by
education, training, or experience, to make the particular decision at issue."
Youngberg 457 U.S. at 323 FN 30.

due process or an avenue to complain about a lower score;
defendants do not hire enough qualified therapists and use
unqualified trainees; and defendants have not separated the therapy
levels and the behavior levels with the result that plaintiff's
behavior can prevent his progression or cause retrogression.
Plaintiff also complains about methods utilized during treatment:
residents are forced to participate in the program to maintain their
privileges; if one does not participate, he is punished by either
being placed in the Intensive Treatment Unit (ITU) where he is
stripped of all property and privileges and secluded from the main
population, or "his level" is reduced along with his privileges;
residents can be made to repeat a class they have completed, without
due process; and therapy levels attained by doing a certain amount
of work can be dropped and the work required to be redone, without
due process.

    Plaintiff asserts that defendants are violating his right to
substantive due process by failing to provide treatment for his sex
offender disorder that is effective enough to culminate in his
release.   The court finds sufficient facts are not alleged in
support of this claim to state a federal constitutional violation.
Mr. Merryfield does not allege any facts suggesting that
professional judgment was not exercised in the development of the
treatment program at the SPTP.   Nor does he allege any facts
indicating that the present treatment policies represent a
substantial departure from accepted professional judgment.

    In addition, the United States Supreme Court in Hendricks
considered and rejected this very claim with regard to the KSVPA:

        . . . Hendricks argued that the Act is necessarily

punitive because it fails to offer any legitimate
"treatment." Without such treatment, Hendricks asserted,
confinement under the Act amounts to little more than
disguised punishment. Hendricks' argument assumes that
treatment for his condition is available, but that the
State has failed (or refused) to provide it. The Kansas
Supreme Court, however, apparently rejected this
assumption, explaining:

> It is clear that the overriding concern of the
> legislature is to continue the segregation of
> sexually violent offenders from the public.
> Treatment with the goal of reintegrating them
> into society is incidental, at best. The
> record reflects that treatment for sexually
> violent predators is all but nonexistent. The
> legislature concedes that sexually violent
> predators are not amenable to treatment under
> [the existing Kansas involuntary commitment
> statute]. If there is nothing to treat under
> [that statute], then there is no mental
> illness. In that light, the provisions of the
> Act for treatment appear somewhat disingenuous.

259 Kan., at 258, 912 P.2d, at 136. It is possible to
read this passage as a determination that Hendricks'
condition was untreatable under the existing Kansas civil
commitment statute, and thus the Act's sole purpose was
incapacitation. Absent a treatable mental illness, the
Kansas court concluded, Hendricks could not be detained
against his will.

Accepting the Kansas court's apparent determination
that treatment is not possible for this category of
individuals does not obligate us to adopt its legal
conclusions. We have already observed that, under the
appropriate circumstances and when accompanied by proper
procedures, incapacitation may be a legitimate end of the
civil law. See Allen, supra, at 373; Salerno, 481 U.S.,
at 748-749. Accordingly, the Kansas court's determination
that the Act's "overriding concern" was the continued
"segregation of sexually violent offenders" is consistent
with our conclusion that the Act establishes civil
proceedings, 259 Kan. at 258, 912 P.2d at 136, especially
when that concern is coupled with the State's ancillary
goal of providing treatment to those offenders, if such is
possible. While we have upheld state civil commitment
statutes that aim both to incapacitate and to treat, see
Allen, supra, we have never held that the Constitution
prevents a State from civilly detaining those for whom no
treatment is available, but who nevertheless pose a danger
to others. A State could hardly be seen as furthering a
"punitive" purpose by involuntarily confining persons
afflicted with an untreatable, highly contagious disease.
(citation omitted). Similarly, it would be of little
value to require treatment as a precondition for civil

> confinement of the dangerously insane when no acceptable
> treatment existed.   To conclude otherwise would obligate
> a State to release certain confined individuals who were
> both mentally ill and dangerous simply because they could
> not be successfully treated for their afflictions.
> (citations omitted).

Kansas v. Hendricks, 521 U.S. at 365-66.

Completing the treatment program is not the sole means to effectuate plaintiff's release.  Under the KSVPA confined persons are afforded three different avenues of review.  First, the committing court is obligated to conduct a yearly review of an SVP's mental condition to determine whether continued detention is warranted.  K.S.A. § 59-29a08(a).  Second, the SRS Secretary may, at any time, decide that the confined individual's condition had so changed that release is appropriate.  K.S.A. § 59-29a10.  Finally, the confined person can at any time file a petition for release.  K.S.a. § 59-29a11.  If the court finds that the State can no longer satisfy its burden under the initial commitment standard, the individual will be freed from confinement.  See  Hendricks, 521 U.S. at 350-53, 364.

The Supreme Court in Hendricks observed that language in the KSVPA itself indicates the Secretary of the SRS is obliged to provide treatment to individuals like Hendricks and plaintiff.  Id. citing K.S.A. § 59-29a07(a)(statute quoted herein at FN 1).  The court further noted that:

> Other of the Act's sections echo this obligation to
> provide treatment for committed persons.   See, e.g., §
> 59-29a01 (establishing civil commitment procedure "for the
> long-term care and treatment of the sexually violent
> predator"); § 59-29a09 (requiring the confinement to
> "conform to constitutional requirements for care and
> treatment").    Thus, as in Allen, "the State has a
> statutory obligation to provide 'care and treatment for
> [persons adjudged sexually dangerous] designed to effect
> recovery,'" 478 U.S., at 369 (quoting Ill.Rev.Stat., ch.

> 38, ¶ 105-8 (1985), and we may therefore conclude that
> "the State has . . . provided for the treatment of those
> it commits," 478 U.S. at 370.

Id. at 367.  The Court acknowledged the treatment program initially

offered Hendricks seemed "somewhat meager," but he was the first

person committed under the Act, and "the State did not have all of

its treatment procedures in place."  The Court then found:

> What is significant, however, is that Hendricks was placed
> under the supervision of the Kansas Department of Health
> and Social and Rehabilitative Services, housed in a unit
> segregated from the general prison population and operated
> not by employees of the Department of Corrections, but by
> other trained individuals.  And, before this Court, Kansas
> declared "[a]bsolutely" that persons committed under the
> Act are now receiving in the neighborhood of "31-1/2 hours
> of treatment per week."  Tr. of Oral Arg. 14-15, 16.

Id. at 367-68.  The Court reasoned:

> We have explained that the States enjoy wide latitude in
> developing treatment regimens.  Youngberg v. Romeo, 457
> U.S. 307, 317 (1982)(observing that the State "has
> considerable discretion in determining the nature and
> scope of its responsibilities").  In Allen v. Illinois,
> 478 U.S. 364 (1986), for example, we concluded that "the
> State serves its purpose of treating rather than punishing
> sexually dangerous persons by committing them to an
> institution expressly designed to provide psychiatric care
> and treatment."  Id., at 373.  By this measure, Kansas has
> doubtless satisfied its obligation to provide available
> treatment.  (Citations shortened).

Id. at 367-68.  Needless to say, the Supreme Court's opinion in

Hendricks is controlling here.  Thus, unless plaintiff alleges

either that the professional standard for treatment of SVPs or

actual treatment provided at the SPTP in Kansas has significantly

changed for the worse since Hendricks, he states no claim.

The Tenth Circuit Court of Appeals' has held that even though

the Due Process Clause governs a pretrial detainee's claim of

unconstitutional conditions of confinement, "the Eighth Amendment

standard provides the benchmark for such claims."  Craig v. Eberly,

22

164 F.3d 490, 495 (10th Cir. 1998), *citing* <u>McClendon v. City of Albuquerque</u>, 79 F.3d 1014, 1022 (10th Cir. 1996).   Analyzing plaintiff's allegations under Eighth Amendment "deliberate indifference" standards, the court finds he likewise fails to state sufficient facts in support a federal constitutional claim.

To establish a violation of the Eighth Amendment, "a plaintiff must satisfy two requirements, consisting of an objective and subjective component." <u>Craig</u>, 164 F.3d at 495.   The objective component requires that the medical need be "sufficiently serious." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991); <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994); <u>see</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-104 (1976); <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).   The subjective component requires that defendant officials acted with a "sufficiently culpable state of mind." <u>Wilson</u>, 501 U.S. at 297.

Even if the court assumes Mr. Merryfield's behavior as a sexually violent predator can be proven to spring from a treatable disorder, he does not allege and might not even wish to admit, that he suffers from a "serious disorder" necessitating treatment.   Nor does he allege that a physician has diagnosed him as having a condition mandating treatment, or that a layperson would easily recognize his condition as necessitating a doctor's attention. <u>Cf</u>. <u>Riddle</u>, 83 F.3d at 1204.   Thus, it might be questioned whether Mr. Merryfield has alleged a serious medical need. <u>Id</u>. at 1202, *citing* <u>Bowring v. Godwin</u>, 551 F.2d 44, 47 (4th Cir. 1977)(A prisoner is entitled to psychological or psychiatric treatment if a physician or other health care provider concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may

be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.); cf Patterson v. Webster, 760 F.Supp. 150, 154 (E.D.Mo. 1991)("[T]he mere fact that the plaintiffs are convicted sexual offenders does not mean that they have psychological disorders or that they are in need of psychiatric treatment."). Perhaps it could be presumed from findings required by the KSVPA to have been made during plaintiff's civil commitment trial, that Mr. Merryfield has a "serious disorder."

In any event, plaintiff's allegations are also insufficient to satisfy the subjective prong of Estelle: deliberate indifference on the part of defendants.  Plaintiff alleges no facts indicating defendants have intentionally denied or delayed his access to SVP treatment or intentionally interfered with prescribed treatment. See Estelle, 429 U.S. at 97.

The foregoing Eighth Amendment analysis makes it obvious that plaintiff's claim of denial of SVP treatment is not based upon allegations that he has a serious condition for which he is being denied treatment.  Rather, he claims a right to treatment that will allow him to be released from the SPTP.  He asserts he is entitled to such treatment under the KSVPA.  As the Supreme Court noted in Hendricks, the KSVPA does provide for the care and treatment of SVPs in Kansas.   To the extent plaintiff seeks relief for alleged violations of the KSVPA or other Kansas statutes and regulations, he states no cognizable claim under § 1983.  Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002); see Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).  Plaintiff is therefore strongly advised that his only recourse for this claim is most likely in state court

under the KSVPA, and not in federal court under the U.S. Constitution.

Most of plaintiff's complaints regarding treatment at the SPTP amount to his disgruntlement with loss of privileges for non-participation or inappropriate behavior in the program. A person detained by the State has no right to the type of treatment he desires. A layperson's disagreement with the treatment he is being provided does not amount to a federal constitutional claim. See Collignon v. Milwaukee County, 163 F.3d 982, 990 (7th Cir. 1998)(mere disagreement about which of many professionally acceptable treatment plans should have been implemented does not make out substantive due process claim); P.C. v. McLaughlin, 913 F.2d 1033, 1043 (2d Cir. 1990)("The requirement that professional judgment be exercised is not an invitation to a court reviewing it to ascertain whether in fact the best course of action was taken.").

In Lile v. McKune, the plaintiff complained of being demoted in status as a result of his decision not to participate in the prison's sex offender treatment program, and the loss of privileges associated with the demotion. The U.S. Supreme Court stated:

> An essential tool of prison administration . . . is the authority to offer inmates various incentives to behave. The Constitution accords prison officials wide latitude to bestow or revoke these perquisites as they see fit.

Lile v. McKune, 536 U.S. 24, 39 (2002). Civil commitment of dangerous sexual offenders "will normally involve individuals who find it particularly difficult to control their behavior." Kansas v. Crane, 435 U.S. at 414. For SVPs in particular then, it is rational to base the receipt of privileges on participation in treatment and good behavior. Furthermore, the "use of a variety of

levels within a program that correspond with privileges to encourage active participation in treatment and the demonstration of positive behavior is not atypical of institutional and quasi-correctional settings." See Hargett v. Adams, 2005 WL 399300 at *7 (N.D.Ill. Jan. 14, 2005, unpublished)("Making privileges contingent on good behavior and participation in treatment creates positive contingencies and reinforcements for productive therapeutic behavior."); see also Williams v. Gintoli, 2004 WL 1474658 at *8 (D.S.C., Mar. 9, 2004, unpublished), aff'd 98 Fed.Appx. 955 (4th Cir. 2004).   Indeed, no federal constitutional right is violated by plaintiff being forced to choose between participation in the SPTP and the withdrawal of his privileges[16].

Plaintiff's claim regarding the qualifications of staff in the SPTP is not supported by facts.   Plaintiff does not allege that he is entitled under the KSVPA to staff with certain professional qualifications.   Plaintiff must describe an assessment of him and the date taken, name the staff involved, describe how their training was deficient, and how the results would have been different with other training.

At the same time plaintiff complains he is denied adequate treatment, he asserts he has a constitutional right not to participate in therapy.   Even though plaintiff generally has a right to refuse treatment, he has no concomitant right to avoid the consequences of a willful decision not to participate in treatment

---

[16]    The United States Supreme Court applied the procedural due process analysis established by the Court in Sandin, 515 U.S. at 484, in determining that forcing an inmate to choose between participating in Kansas's Sexual Abuse Treatment Program and losing prison privileges is not compulsive and does not violate an inmate's privilege against self-incrimination.   Lile, 536 U.S. 24 (2002); Reed v. McKune, 298 F.3d 946, 952 (10th Cir. 2002).

programs within the SPTP.  It is not improper to base the receipt of privileges on participation in treatment.  <u>Hargett</u>, 2005 WL at 399300 ("sweeping class action lawsuit" raising many claims similar to plaintiffs with regard to the treatment of sexually violent predators.).

## 2.   <u>UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT</u>

Plaintiff generally claims conditions in the buildings at LSH which house SVPs are unconstitutional.  More specifically, he complains that renovations in these buildings such as sinks, toilets, water knobs, light switches, intercoms, locks to rooms, cameras, bars on windows, and night lights were designed or installed to provide maximum security.  Like the SVP plaintiff in <u>Thielman</u>, Mr. Merryfield asserts that substantive due process required defendants to consider less restrictive alternatives.

The court in <u>Thielman</u> rejected a similar assertion:

> Plaintiff may be correct that the institution could address its security interests with a more tailored policy, but that is not the test.  Contrary to plaintiff's suggestion, nothing in <u>Youngberg</u> suggests that the choice made by the institution must have been the least restrictive alternative available.  To the contrary, <u>Youngberg</u> admonishes judges to respect the choices made by professionals at state institutions.  So long as that choice was made by a professional, it is presumptively valid even if it is not the best alternative.

<u>Thielman</u>, 149 F.Supp.2d at 992.  An SVP has no absolute federal constitutional right to be housed in a facility with "the least restrictive" features or with less security features than a prison. <u>See</u> <u>Hargett</u>, 2005 WL 399300 at *2.  The Supreme Court held in reviewing conditions challenged by SVPs in Illinois: "the fact that (an institution) is apparently a maximum-security facility (does

not) affect our analysis" that the State's intent is to treat rather than to punish. Allen, 478 U.S. at 373. Thus, even accepting plaintiff's allegations that the facility housing SVPs in Kansas is high-security, rather than a low-security traditional mental health treatment facility, no federal constitutional claim is presented.

The correct due process standard "requires that the conditions and duration of confinement under the Act bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265. Under this standard, Mr. Merryfield must allege some facts indicating that the conditions he challenges are excessive in relation to the purposes served by his commitment under the KSVPA. The United States Supreme Court and the Kansas appellate courts have clearly recognized two main purposes of the KSVPA and their legitimacy: to incapacitate sexually dangerous predators and to provide treatment. Plaintiff does not and could not dispute that these purposes are legitimate. The challenged conditions plainly involve typical security measures, which could conceivably further legitimate governmental goals. Plaintiff alleges no facts suggesting otherwise. He is given time to allege additional facts indicating how the challenged conditions are excessive in relation to the purposes of his confinement.

Plaintiff also very generally alleges that the "facility" has failed to provide humane treatment with respect to water temperature for showers and hand washing; failed to afford his right to religious services in a timely fashion after request and approval; that he may be locked in or restricted to his room during the night shift in violation of his right to be free of seclusion, and that space in the units is inadequate.

Plaintiff's allegations regarding water temperatures may present a valid claim. However, there is no indication that he personally has suffered any significant physical effects from this condition or that he was ever in serious danger. Nor do his allegations support a conclusion that defendant state officials were aware he faced a substantial risk of serious harm from water temperatures. Plaintiff does not name as defendant the official at the SPTP who has failed to have plumbing repaired. The court accepts as true that plaintiff is restricted to his room during the night shift and the dimensions he provides of his unit, but finds no federal constitutional violation. No facts, such as dates and persons involved, are alleged in support of plaintiff's religious freedoms claim.

Plaintiff generally alleges defendants have failed to ensure a clean, safe, and comfortable environment throughout patient care areas. He also alleges that unsafe conditions amount to cruel and unusual punishment, but does not describe any unsafe condition. He attaches sheets from a report of the Kansas Department on Health and Environment, Department on Aging, dated November 6, 2006, and states it "shows abuse by defendants." However, no facts are alleged describing what abuse in the report was actually suffered by plaintiff at the hands of any defendant. Such completely conclusory allegations are simply not sufficient to support a claim of federal constitutional violation.

### 3.   UNCONSTITUTIONAL CONDITIONS IN THE ITU

Plaintiff claims conditions in the Intensive Treatment Unit (ITU), a program within the SPTP, are unconstitutional based upon

the following allegations: plaintiff is not given prior notice as to what exactly can result in ITU placement; he is placed there for punishment or "for not working the program;" he is not provided "honest unbiased due process to fight the placement;" there are ten-step levels in ITU, each with new privileges, property and liberty, and plaintiff can be dropped a level with no reasons given or opportunity to challenge the action; he is "further restricted" from access to the law library and the courts; "all rights, privileges and property are taken away"; and ITU residents are removed from therapy in violation of their right to receive adequate treatment providing a realistic opportunity for release.  Plaintiff complains of other conditions, which it appears he alleges are also in the ITU, including: phone use is limited to ninety minutes per day even with lawyers and courts; plaintiff is not allowed to possess a typewriter; computer access for games and research in a unit with twenty residents is limited to five hours each day on weekends only; plaintiff may be restricted from using the computer by "the program" for months or indefinitely; plaintiff is not allowed to store any files on the computer's hard drive and is limited to two floppy disks, which is inadequate; and his electricity is taken.  He also generally alleges that "ITU can be an indefinite placement," and lead to cruel & unusual punishment and harassment.

The same standards apply to these conditions claims as to plaintiff's claims regarding general conditions at the SPTP.  To the extent an SVP has been found to be uncontrollably violent and to pose a danger to others, Kansas is entitled to hold him under secure and even coercive conditions.  Officials may also place him in segregation to preserve the safety of staff as well as others and

on treatment grounds.    Plaintiff's general assertions to the contrary have no legal merit.

Moreover, as discussed earlier herein, manipulation of plaintiff's privileges as part of his treatment program does not violate the Constitution.  Furthermore, plaintiff cannot present a constitutional challenge to the procedures used in changing his privilege level because such changes do not implicate protected liberty interests.    Administrative detention implicates constitutional due process only if the confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." <u>McDiffett v. Stotts</u>, 902 F.Supp. 1419, 1426 (D.Kan. 1995), quoting <u>Sandin</u>, 515 at 485; <u>Speed v. Stotts</u>, 941 F.Supp. 1051, 1055 (D.Kan. 1996), citing <u>Sandin</u>, 515 U.S. at 486. As noted earlier, the judge in <u>Hargett</u> found that the use of a variety of phases which correspond with privileges is not "atypical" of institutional and quasi-correctional settings[17].  The step-levels in ITU; changes in plaintiff's housing assignments, his privileges and limitations on his possessions; restrictions on visitation and computer access; and regulation of other daily activities are not shown to be "atypical" or to pose a "significant hardship" within the SPTP at LSH.  It follows that these conditions and restrictions do not involve a protected liberty interest.  Plaintiff will be given time to allege additional facts to support a federal

---

[17]    The judge in <u>Hargett</u> characterized the claim that it is unconstitutional to deny certain privileges or advantages to one who refuses to participate in treatment as not a fact-specific question but one fairly resolved as a principle of law.

constitutional claim, but he faces a difficult task[18].

**4.   DENIAL OF ACCESS**

Plaintiff complains that he is not allowed access to a full law library, and claims this violates his right of access to the courts. In support, he alleges that while he has "minor legal access" to the KSAs, KARs, and certain Supreme Court cases; he is not provided legal assistance and does not have access to state or federal court rules and web sites, legal forms, the CFR, case law from other states, or research tools to shepardize cases, search using

---

[18]     The SVP in _Williams v. DesLauriers_, 172 P.3d at 48 similarly argued that he suffered a deprivation of his liberty by having his phase level reduced two levels, which resulted in his having fewer privileges, more restrictive living conditions, and losing his job through the SPTP program. He "contended that his due process rights were violated because there was no formal disciplinary procedure in place similar to that used by the (KDOC)." The KCOA held:

> [R]esearch has revealed no cases in Kansas that have addressed a similar argument for an individual committed to the SPTP program. Nevertheless, in cases involving a prison inmate, our Supreme Court and this court have held that an inmate's custody classification does not involve a liberty interest. In _Bankes v. Simmons_, 265 Kan. 341, 351, 963 P.2d 412, _cert._ _denied_ 525 U.S. 1060 (1998), the Kansas Supreme Court held that an inmate's custody classification, the housing assignment given to an inmate, spending limitations at a canteen, regulation of visiting hours, and regulation of other daily activities that are not atypical and do not pose a significant hardship within a prison do not involve a liberty interest. Moreover, in _Lile v. Simmons_, 23 Kan.App.2d 1, 929 P.2d 171 (1996), the KCOA held that the inmate had no liberty interest in receiving minimum security status and refused to review the KDOC's decision to maintain the inmate's medium security status.

> Here, Williams has not shown that he had a protected liberty interest in being on a particular phase level of the SPTP program. As a person who had been determined to be a sexually violent predator and had been civilly committed to the control, care, and treatment of SRS, Williams needed to show that he was subjected to some loss of liberty that was beyond the normal circumstances of confined treatment. The alleged actions by the SPTP treatment team were part of Williams' treatment plan as a sexually violent predator.

>     . . . [A] resident's status and privileges in the SPTP are expressly conditioned on the resident's compliance with the rules and the policies of the SPTP. As a result, the actions by the SPTP staff in reducing Williams' treatment phase level are not of such a stature as to infringe on Williams' constitutional rights.

_Id._

keywords, to find lawyers and legal assistants. Plaintiff further complains that "since putting the small law library on the computer, defendants have not trained plaintiff" or others in its use. He alleges he must request legal materials from defendant Hagerman, LSH Legal Counsel, by filling out a form listing "exactly what he is looking for." The court is asked to order defendants to provide a "constitutionally adequate law library."

Plaintiff also alleges he is indigent, and complains that the State does not provide paper, envelopes, or postage for legal work. He further complains that the State Hospital's "indigency policy" of paying $18.00 a month to indigents, of which $6.00 automatically goes for "cable," denies inmates their right of access by forcing them to choose between purchasing "essential" legal supplies and hygiene items required to avoid punishment.

An inmate claiming denial of his right of access to the courts must satisfy the standing requirement of "actual injury" by showing that denial of legal resources has actually hindered his efforts to pursue a nonfrivolous claim. Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996). Because there is no "abstract, free-standing right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." Casey, 518 U.S. at 351. Rather, the inmate must "go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. Plaintiff does not allege facts showing any actual injury.

Moreover, rather than having been denied access, Mr. Merryfield

33

has been able to file an action in Butler County District Court and the instant action.  In his Amended Complaint, plaintiff must allege additional facts showing actual injury, or this claim will be dismissed.

**5.   DENIAL OF ADMINISTRATIVE GRIEVANCE PROCESS**

Plaintiff claims the administrative grievance process within the SPTP at LSH is inadequate and violates Due Process.  In support, he alleges the members of the "Resolution Committee" are residents with no legal training or access and no authority to enforce rulings or policy.  He also alleges defendants do not follow the policy governing the committee and ignore time limits[19].

These allegations, even taken as true, do not state a claim. An essential element of any § 1983 claim is that the challenged conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  Graham v. Connor, 490 U.S. 386, 393-94 (1989); Malek v. Haun, 26 F.3d 1013, 1015 (10th Cir. 1994).  There is no federal constitutional right to an institutional grievance procedure.  See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  Thus, an official's failure to adequately respond to a prisoner's grievance does not implicate a constitutional right.  Walters v. Corrections Corp. of America, 119 Fed.Appx. 190, 191 (10th Cir. 2004)("When the claim underlying the administrative grievance involves a constitutional right, the

---

[19]     Violations of time limits in a regulation, standing alone, do not amount to a deprivation of a federal constitutional right.  Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454 (1989).

prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."), <u>cert</u>. <u>denied</u>, 546 U.S. 865 (2005); <u>Sims v. Miller</u>, 5 Fed.Appx. 825, 828 (10th Cir. 2001)("[I]nsofar as plaintiff contended that CDOC officials had failed to comply with the prison grievance procedures, he had failed to allege the violation of a federal constitutional right."); <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993)(official's failure to process inmates' grievances without more, is not actionable under § 1983); <u>Adams</u>, 40 F.3d at 75; <u>see</u> <u>also</u> <u>for</u> <u>collection of cases</u>: <u>Walker v. Mich. Dept. of Corrections</u>, 128 Fed.Appx. 441, 445 (6th Cir. 2005, unpublished); <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 898 (1988).

In addition, plaintiff fails to provide any set of facts in support of this claim.  He does not describe a grievance filed by him, to whom it was presented, hearings if any, or the inadequate basis for a decision.  Nor does he allege any personal participation on the part of any defendant in the handling of his grievances.

Plaintiff also complains that he has never been notified of his rights as a resident in the SPTP.  His own exhibits contradict this claim.  Mr. Merryfield submitted with his complaint five handbooks, which provide detailed information about the SPTP and a resident's "rights."  Complaint (Doc. 1), Exhibs A, B, C, D, and N.  Plaintiff does not suggest what additional rights defendants are required to explain.  The court finds no federal constitutional violation.


**6.   <u>DISCIPLINE WITHOUT DUE PROCESS</u>**

Plaintiff claims the disciplinary procedure "provided by the

SPTP" is unconstitutional.  In support he generally alleges he is denied due process for any punishment other than a security level or phase level drop; he is punished by staff without a hearing; he is denied the right to face and cross-examine witnesses against him, and to present favorable evidence and witnesses; time limits are ignored; the officer who investigates also conducts the disciplinary hearing; and hearing officers are biased and untrained[20].  Plaintiff asserts that KDOC inmates, in contrast, are afforded all the requisite due process.

Plaintiff's claims regarding the disciplinary process within the SPTP are, for the most part, too conclusory.  In order to state a claim of denial of procedural due process in connection with disciplinary actions taken against him, plaintiff must describe the actual disciplinary charge or charges against him, the elements of due process provided and denied in each instance, the dates he was charged and disciplined and, most importantly, the sanctions imposed including their duration.

In support of his claim that there is no adequate disciplinary process, plaintiff refers to only one specific disciplinary incident involving him.  He alleges he was punished after the incident, without due process and prior to issuance of a disciplinary report. These bald statements are insufficient to state a federal due process violation.  In any event, this specific incident appears to have been raised by plaintiff in the action he has pending in state

---

[20]   Plaintiff also alleges that inmates are charged for "putting hands on staff" but not vice versa; and plaintiff is "well known for pushing back physically when harassed, pushed, and backed into a corner," which leads staff "to do what they want," including taking him to court and charging him.  These allegations, taken as true, evince no constitutional violation whatsoever.

court.  "Younger abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief-such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings when such relief could adequately be sought before the state court."  See Younger v. Harris, 401 U.S. 37 (1971); Amanatullah v. Colorado Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999).  The Tenth Circuit has stated that in determining if Younger abstention is appropriate, a court considers whether:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies." . . . Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain. . . .

Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1215 (10th Cir. 2003).  Plaintiff's ongoing state judicial proceedings include his challenge to this particular disciplinary action.  The state is presumed to provide an adequate forum, and the proceedings obviously involve state interests and laws.  The court concludes that Younger bars its consideration of this claim, based as it presently is on one specific incident.  It follows that this claim must be dismissed, without prejudice.

Plaintiff also fails to allege facts showing the personal participation of any named defendant in any specific disciplinary action taken against him.

## 7.   DENIAL OF OTHER MEDICAL AND DENTAL CARE

Plaintiff complains that he has been denied medical and dental care while at the SPTP.  It appears from plaintiff's own allegations that, rather than having been denied all treatment, he has actually received treatment.  His complaints are more precisely that treatment has not been as readily accessible as he believes is necessary.  Plaintiff has not described any significant harm suffered by him due to a delay in medical or dental treatment.  He also has not provided dates on which he sought treatment for particular ailments and the names of persons who denied treatment.  Mr. Merryfield's opinion that treatment is inadequate bolstered only by his allegations of inconvenience, simply does not state a claim under either the Eighth or Fourteenth Amendment.

At the same time plaintiff alleges he is being denied medical treatment, he claims he is being denied the right to refuse treatment.  In support, he alleges he was "suspended" for not taking a prescribed medicine, which he felt was not necessary.  While plaintiff generally may choose to refuse medication, he has no right to avoid the consequences of refusing to participate in his treatment program.  Moreover, he fails to allege sufficient facts regarding this incident to support a claim of federal constitutional violation, and to demonstrate personal participation by any named defendant.  He does not state what medication was prescribed for what purpose, who ordered the medication, the date on which he was suspended, what he was suspended from, the duration of the suspension, or who ordered his suspension.

**8.   <u>UNLAWFUL USE OF MECHANICAL RESTRAINTS</u>**

Plaintiff asserts that the SPTP's restraints policy violates

his right to procedural due process because staff are not required to make an individualized determination that he poses a danger each time it places him in restraints. He additionally claims the automatic use of restraints violates his right to the least restrictive conditions of confinement. He alleges that restraints are used for punishment and "more on lower levels."

As factual support, plaintiff alleges he was given the option of wearing restraints or not attending his grandfather's funeral. He attended and in metal handcuffs or belly chains, which he wore for over four hours, even though he was calm. He further alleges he has been transported to shoe stores and doctor appointments on or off grounds in restraints. He claims KDOC inmates are never in restraints on grounds.

The court finds plaintiff does not allege sufficient facts to support a claim that defendants' use of restraints in the SPTP violates either the equal protection clause or his due process rights. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). "Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Plaintiff is not alleged to be a member of a "suspect class," and is not "similarly situated" to convicted criminals serving sentences

for punishment in KDOC facilities.  He does not allege facts indicating he is treated differently than other "similarly situated" detainees, which would be the SVPs at LSH or elsewhere.

Even accepting plaintiff's allegation that officials at the SPTP do not make an individualized determination each time he is placed in restraints, no federal due process claim is stated. Plaintiff does not allege facts indicating the use of restraints at the SPTP is atypical in relation to the ordinary incidents of his civil confinement.  Moreover, in Youngberg, the U.S. Supreme Court rejected an argument that the State must establish the "necessity" of applying to detainees restraints or other forms of close custody, but concluded that a State still must ensure that considered judgment has been exercised.   Youngberg, 457 U.S. at 321-22 (Detainees are entitled to "the exercise of professional judgment as to the needs of residents.").  If professional judgment leads to the conclusion that restraints are necessary for the well-being of the detainee or others, then the Constitution permits those devices. Cf. Bell, 441 U.S. at 539-40 (similar conclusion with respect to pretrial detainees, who like civil detainees are held for reasons other than punishment).  Seling, 531 U.S. at 265; see West v. Schwebke, 333 F.3d 745, 748 (7th Cir. 2003).  Plaintiff alleges no facts suggesting professional judgment was not exercised in developing the SPTP restraints policy, that the policy is not in accord with professional standards, or that it is excessive.  He must allege and would have to prove such facts.  The court found in Thielman, upon a motion for summary judgment that:

> Plaintiff has not adduced a single piece of evidence to
> show that the Wisconsin Resource Center's transportation
> policy represents a substantial departure from accepted

professional judgment, practice or standards or that it is so excessive in relation to the institution's security concerns as to be tantamount to punishment.

Thielman, 140 F.Supp.2d at 992.

Whether the SPTP's policy on restraints violates a state statute or regulation is a question for the Kansas courts.

## 9.   DENIAL OF VISITATION RIGHTS

Plaintiff claims that visitation policies at the SPTP are unconstitutional.   In support, he alleges visits by the younger siblings or children of residents are limited to one week a month; residents must request visits in advance; plaintiff has had visits denied due to a lack of staff; and plaintiff is only allowed visits on weekends.   He asserts he is entitled to visitation seven days a week.   In addition, plaintiff alleges that visits with legal counsel are not private and are videotaped.   His complaint about disposable cameras is frivolous.

The court finds no federal constitutional violation in visits with any non-lawyer coming from outside the institution being under surveillance.   Plaintiff does not claim that his right of access to the courts has been violated by these circumstances applying to attorney visits.   Nor does he allege facts describing a particular visit by his attorney, including the date, and which named defendant videotaped or otherwise interfered with that visit.   He has thus failed to allege a sufficient factual basis for this claim.

## 10.   INTERFERENCE WITH MAIL

Plaintiff claims his First Amendment rights have been violated due to the handling of his incoming mail.   He generally asserts he

must be given due process notice of decisions to censor or withhold mail.   As factual support for this claim, plaintiff alleges a package, received with his first name "Dustin" misspelled as "Justin," was returned without notice to him or the sender company. He adds that he is "never informed when mail is returned."

The Supreme Court has recognized that prisoners and detainees have protected First Amendment interests in both sending and receiving mail.   See Thornburgh v. Abbott, 490 U.S. 401 (1989); Turner v. Safley, 482 U.S. 78 (1987).   Prison regulations or practices affecting a prisoner's receipt of mail must therefore be "reasonably related to legitimate penological interests." Thornburgh, 490 U.S. at 409, quoting Turner, 482 U.S. at 89. However, Mr. Merryfield does not allege that regulations governing incoming mail are unconstitutional, but that officials interfered with his receipt of one piece of incoming mail.   An isolated incident, without any evidence of improper motive or resulting interference with Merryfield's right of legal access, does not give rise to a constitutional violation.   Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990).

Moreover, plaintiff does not allege that any defendant was personally involved in the mishandling of his mail.

## 11.   <u>VIOLATION OF RIGHT TO PRIVACY</u>

Plaintiff complains that defendants have two-way intercoms everywhere and can listen to his conversations without his knowledge.   He also complains that he cannot communicate privately by telephone in the available phone banks.   He asserts his right to privacy is violated by these circumstances and by videotaping.

The court finds no federal constitutional deprivation in the mere fact that sexually violent predators involuntarily confined for the main purpose of incapacitation, as they are in Kansas, are under surveillance. In <u>Sandin</u>, the Supreme Court rejected the involvement of federal courts in the "day-to-day management of prisons," and sought instead to "afford appropriate deference and flexibility to state officials trying to manage a volatile environment." <u>Thielman</u>, 282 F.3d at 478, *citing* <u>Sandin</u>, 515 U.S. at 482-83. While the SPTP cannot be termed a prison, "[n]onetheless, facilities dealing with those who have been involuntarily committed for sexual disorders are 'volatile' environments whose day-to-day operations cannot be managed from on high." <u>Id</u>. *citing* <u>Youngberg</u>, 457 U.S. at 307. Recognition of a constitutional right of privacy depends on whether the person seeking its protection has a legitimate expectation of privacy recognized by society generally. <u>Katz v. United States</u>, 389 U.S. 347 (1967). In <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 (1984) the Supreme Court reasoned:

> The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
>
> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others.
> * * *
> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. [FN8] We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be

considered the paramount interest in institutional
security. We believe that it is accepted by our society
that "[l]oss of freedom of choice and privacy are inherent
incidents of confinement." Bell v. Wolfish, 441 U.S., at
537, 99 S.Ct., at 1873.

Id.

Furthermore, plaintiff again fails to allege facts in support

of this claim. He describes no particular incident involving

surveillance of him, and no personal participation by any named

defendant in such an incident. Plaintiff's claims here, as

elsewhere, are simply too broadly and vaguely pled.

Plaintiff also claims treatment in the SPTP violates his right

to privacy because he "must tell all to all residents." He further

complains that he is required to take a polygraph and incriminate

himself without counsel or due process; and if he refuses he is

"stonewalled and unable to complete the program."

Plaintiff's due process rights are not violated by staff

compelling him to participate in the SPTP or expecting him to

discuss his prior sexually violent conduct during treatment.[21]  See

Riddle, 83 F.3d at 1197; see also Lile v. Simmons, 23 Kan.App.2d 1,

929 P.2d 171 (1996); Gilmore v. McKune, 22 Kan.App.2d 167, 915 P.2d

779 (1995); Davis v. Finney, 21 Kan.App.2d 547, 902 P.2d 498 (1995).

In Allen, the U.S. Supreme Court observed:

This Court has never held that the Due Process Clause of
its own force requires application of the privilege
against self-incrimination in a noncriminal proceeding,
where the privilege claimant is protected against (is) his
compelled answers in any subsequent criminal case.

---

[21]    As the Court stated in McKune, many specialists think self-accusatory
features are essential to treatment (just as alcoholics must admit that they have
a problem). Plaintiff may disagree with this treatment and wish to eschew
polygraphs, but neither detainees nor courts may substitute their judgment for
that of the professionals who design treatment programs. Allison, 332 F.3d at
1980-81.

Allen, 478 U.S. at 374.   Moreover, in McKune v. Lile, 536 U.S. at
24, the Supreme Court held that no constitutional right is violated
by a prison sexual-abuse treatment program which imposes loss of
various prison privileges for failure to participate in a counseling
program that requires the inmates to complete an unprivileged sexual
history form which details all prior sexual activities, regardless
of whether such activities constitute uncharged criminal offenses.
Id.   The Supreme Court noted that therapists and correctional
officers widely agree that clinical rehabilitative programs can
enable sex offenders to manage their impulses and in this way reduce
recidivism.   The Court in Lile reasoned:

> A prison clinical rehabilitation program, which is
> acknowledged to bear a rational relation to a legitimate
> penological objective, does not violate the privilege
> against self-incrimination if the adverse consequences an
> inmate faces for not participating are related to the
> program objectives and do not constitute atypical and
> significant hardships in relation to the ordinary
> incidents of prison life.

Id., at 37-38.

Plaintiff also claims defendants have failed to prevent
unauthorized access to medical records.   Individuals have a
constitutionally protected interest in avoiding disclosure of
personal matters, including medical information.   Whalen v. Roe,
429 U.S. 589, 599-600, (1977).   However, the right to information
privacy is not absolute.   Plaintiff alleges no facts in support of
this claim including what personal medical information was disclosed
when, to whom, and how any defendant was involved.


**12.   UNREASONABLE SEARCHES**

Plaintiff claims he has been subjected to searches that violate

his Fourth Amendment rights.  See Hydrick, 500 F.3d at 978.  In Bell v. Wolfish, the Supreme Court upheld a room search rule against a Fourth Amendment challenge by pretrial detainees, and "acknowledged the plausibility of an argument that 'a person confined in a detention facility has no reasonable expectation of privacy with respect to his room or cell and that therefore the Fourth Amendment provides no protection for such a person'."  Hudson, 468 U.S. at 525 FN 6, citing Bell, 441 U.S. at 556-57.  The court in Hudson held:

> [S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.

Hudson, 468 U.S. at 526, 530.  This court finds this reasoning applicable to committed SVPs, and thus concludes plaintiff has no federal constitutional right to avoid room searches.

However, the Supreme Court "has recognized a qualitative difference between property searches and searches of a prisoner's person."  The prisoner's privacy interest in the integrity of his own person is preserved in Bell, 441 U.S. at 558, where the Supreme Court applied traditional Fourth Amendment analysis to a constitutional challenge by prisoners to personal body searches.  Dunn, 880 F.2d at 1191; Levoy v. Mills, 788 F.2d 1437, 1439 (10th Cir. 1986).  In considering plaintiff's claim regarding strip searches, the court looks to case law pertaining to pretrial detainees.  Prison regulations requiring strip searches are valid if "reasonably related to legitimate penological interests."  Turner, 482 U.S. at 79; Bell, 441 U.S. at 545.  The Supreme Court developed a balancing test to evaluate the reasonableness of a strip search of a pretrial detainee.  Id. at 559.  Factors to be considered in the

balancing process include: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating it; and (4) the place in which the search is conducted. Id. In his Amended Complaint, plaintiff must at least allege the dates on which he was stripped searched, the circumstances giving rise to the searches, and the defendant's name that was involved.

13. **PROPERTY RIGHTS VIOLATED**

Plaintiff contends that the rules regarding property at the SPTP violate his constitutional rights. He alleges he "can" lose his right to property as punishment without due process, and even as a result of another resident abusing property. He complains that one "can" lose property for three to six months when placed in ITU. These allegations are too speculative, in that they do not allege that plaintiff has actually lost property, what property he lost on what dates, if the loss was a temporary deprivation as part of his treatment program, and what defendants were involved.

Plaintiff also apparently complains that he is not allowed to maintain a personal, outside bank account. The court finds these facts, taken as true, do not evince a federal constitutional violation.

Plaintiff further remarks he is not responsible for paying for care, treatment, or room and board until he is released from the KSPVA. However, K.S.A. § 59-29a12 expressly authorizes the Secretary to obtain reimbursement from residents.

14. **VOCATIONAL TRAINING PROGRAM UNCONSTITUTIONAL**

Plaintiff states he is employed in the Vocational Training program at LSH, and generally claims it violates federal and state laws.  In support, he alleges there is no due process or appeal when a resident is suspended, written up, or terminated.  He also complains that he is not paid minimum wage, and money is deducted from his wages by the payroll office in Topeka.

Participation in a vocational training program while involuntarily confined is a privilege, not a right guaranteed by the federal constitution.  <u>See</u> <u>Sandin</u>, 515 U.S. at 485-86.  Thus, plaintiff's complaints regarding suspensions, terminations, and wages state no federal constitutional claim.  His allegation of violation of state laws must be raised in state court.  Furthermore, plaintiff's participation in an SPTP vocational training program does not place him within the definition of an "employee" entitled to minimum wage under federal law.  If he is entitled to such wages under state law, he must seek relief in state court.


15. **STATE STATUTES UNCONSTITUTIONAL**

Plaintiff asserts that certain state statutes "enforced by defendants" are unconstitutional as applied to him.  He challenges the state statute providing he is entitled to treatment, rehabilitation, and education on the basis that it contains the qualifier "within the available . . . funds."  He claims this qualifying language violates his right to adequate treatment, and that defendants have stated they lack the funds to provide more treatment.  The question of whether a state statute is being properly implemented by state officials is one for the state courts.

Plaintiff challenges K.S.A. § 21-3448, "Battery against a Mental Health Employee," as allowing him to be punished for behaviors for which he was civilly committed.   He claims this renders "the program" punitive and violates double jeopardy.   No facts whatsoever are alleged in support of this claim.  Plaintiff's claims that K.S.A. § 59-29a01 denies him due process and his right to a speedy trial; and that defendants are never prosecuted under state statutes providing they are to be punished for their wrongs, also are completely devoid of factual support.  These conclusory statements may not go forward as claims.

Plaintiff also claims state statutes permit his indefinite detention in the county jail, and that this violates due process, double jeopardy, and his right to treatment, which is not provided at the county jail.  Plaintiff seeks injunctive relief in this action, and cannot obtain such relief on the basis of this claim since he is not confined in a county jail.

Plaintiff seems to ask the court to enforce his rights under any mental health bills.  No federal claim is stated by asserting a violation of any state mental health patients' bill of rights.  Such claims must be pursued in state court.  Nor may plaintiff obtain relief under the Federal Mental Health Patients Bill of Rights, 42 U.S.C. § 10841, et seq., for the reason that this legislation does not create a private cause of action.  Id. at § 10851(a); See Brooks v. Johnson & Johnson, Inc., 685 F.Supp. 107 (E.D.Pa. 1988).

## 16.  DOUBLE JEOPARDY

Plaintiff makes the conclusory statement that he has been subjected to double jeopardy.   It is well established that the

constitutional prohibition against double jeopardy applies only to proceedings that are "essentially criminal" in nature. Helvering v. Mitchell, 303 U.S. 391, 398 (1938). Thus, double jeopardy protections do not apply to detention facility disciplinary proceedings. Lucero v. Gunter, 17 F.3d 1347, 1351 (10th Cir. 1994). If plaintiff intends to claim that his commitment under the KSVPA constitutes double jeopardy, that claim is precluded by the Supreme Court's finding in Hendricks that the KSVPA is civil, not criminal, in nature. Hendricks, 521 U.S. at 369; see Seliq, 531 U.S. at 737.

## DENIAL OF EQUAL PROTECTION

Plaintiff repeatedly asserts throughout his complaint that persons who have been civilly confined in psychiatric hospitals under sexual predator laws are entitled to "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." He cites as authority Jones v. Blanas, 393 F.3d at 932. Blanas involved a person detained in segregation in a county jail awaiting civil commitment proceedings. Id. at 931. Plaintiff herein describes conditions and privileges allegedly provided to KDOC inmates in Kansas, which he complains are not afforded to him: free cable in his room; electricity even when he is disobedient; the ability to purchase and possess over-the-counter medicines, vitamins, razors, hair clippers, canned pop and food; the ability to walk and work on the LSH grounds without restraints and supervision; the ability to have a job and support himself; the right to receive a current rule book outlining all violations and punishments; and other deprivations already discussed herein. In an apparent attempt to

support this claim, plaintiff attaches numerous KDOC IMPPS and KARs to his complaint.

The court finds, even assuming the truth of plaintiff's allegations that he is denied these things while KDOC inmates are not, he fails to state a claim of violation of the equal protection clause. As previously noted, plaintiff is not "similarly situated" with KDOC inmates. The Kansas courts have found that the SVPA does not treat "similarly situated" individuals dissimilarly:

> All members of the class of persons who are sexually violent predators with a mental abnormality or personality disorder likely to engage in predatory acts of sexual violence are subject to identical treatment, and there exist clear distinctions between this class and other classes which are not similarly treated.

Matter of Hay, 263 Kan. 822, 833, 953 P.2d 666 (Kan. 1998). Nor do any of these privations appear to involve a fundamental right. Moreover, plaintiff alleges no facts indicating restrictions in the SPTP are not rationally related to a legitimate governmental purpose, or are irrational or arbitrary. See Riddle, 83 F.3d at 1207; White v. Colorado, 157 F.3d 1226, 1234 (10th Cir. 1998), cert. denied, 526 U.S. 1008 (1999); Curley v. Perry, 246 F.3d 1278, 1285 (10th Cir.), cert. denied, 534 U.S. 922 (2001).

Plaintiff's claim that his equal protection rights are violated because he can be immediately charged and taken back to the county jail or KDOC for a criminal act or parole violation is patently frivolous. Any person in Kansas can be arrested for a criminal act or parole violation and end up at these facilities.

For the foregoing reasons, Mr. Merryfield is ordered to prepare and submit an Amended Complaint curing the deficiencies in his original complaint discussed herein. He should number his claims as

they are numbered herein, even if he omits some claims.  He may use and attach additional pages as needed to state his claims, but should follow the directions in the forms for all claims.

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Doc. 2) is granted, his motion to appoint counsel (Doc. 4) is denied, without prejudice, his motions for temporary injunctions (Doc. 5, 6) are denied, and his Motion to Submit New Evidence (Doc. 7) is granted.

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days to file an "Amended Complaint" which complies with the foregoing Memorandum and Order.

The Clerk is directed to transmit to plaintiff forms for filing a civil rights complaint under 42 U.S.C. § 1983.

**IT IS SO ORDERED**.

Dated this 26th day of February, 2008, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge